WR-56,666-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/4/2015 5:02:57 PM
Accepted 11/5/2015 8:03:15 AM
ABEL ACOSTA
CLERK

**IN THE COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXAS
AUSTIN, TEXAS**

RECEIVED
COURT OF CRIMINAL APPEALS
11/5/2015
ABEL ACOSTA, CLERK

**EX PARTE** §
§
§   **NO. WR-56,666-03**
§
**DENNIS LEE ALLEN** §

**IN THE COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXAS
AUSTIN, TEXAS**

**EX PARTE** §
§
§   **NO. WR-82,467-01**
§
**STANLEY ORSON MOZEE** §

**MOTION TO REMAND CASES TO TRIAL COURT**

**TO THE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

**NOW COMES** Applicants, DENNIS LEE ALLEN and STANLEY ORSON MOZEE, and submits this Motion to Remand Cases to Trial Court and would show the Court the following:

I.

Applicants were charged as co-actors in this capital murder case and were convicted in separate trials. Applicants previously filed Applications for Writ of Habeas Corpus. One ground of the Applications was that the state violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose agreements with jailhouse informants to assist them with their own criminal cases. The informants testified that they had no agreements. The state agreed with Applicants that relief should be granted based on letters written to the prosecutor confirming that there had been discussions concerning help from the state to

Motion to Remand Cases to Trial Court - Page 1

the informants on their own criminal cases and that the informants had expectations that the state would assist them with their own cases. Based on the trial record, the state agreed with Applicants that these letters were not revealed to defense counsel and that the informants' testimony was false in denying any agreements or expectations of leniency. The trial court agreed and entered Findings of Fact and Conclusions of Law recommending that relief be granted.

On February 4, 2015, the Court of Criminal Appeals issued a remand order to, "provide the trial prosecutor with the opportunity to respond to Applicants' *Brady* claim." On October 26-27, 2015, the trial court held a hearing where the trial prosecutor provided six hours of testimony on this issue. In the course of this testimony, several new matters were revealed that required Applicants to amend their writ applications. On November 4, 2015, both Applicants filed Amended Applications which are attached to this motion.

In his testimony, the trial prosecutor claimed that a notation in his notes concerning showing of physical evidence to defense counsel meant that he showed the exculpatory evidence at issue to defense counsel. The trial prosecutor stated that he had no independent recollection of showing the exculpatory evidence to defense counsel, but relied strictly on this notation in his notes for his contention that he had done so. Although Applicants strongly dispute any suggestion that the prosecutor's notes that he showed "physical evidence" to defense counsel means he showed them letters from jailhouse informants, the testimony does raise a new factual issue. Therefore, as a result of the prosecutor's testimony, Applicants have raised ineffective assistance of counsel claims under the theory that if the prosecutor showed this exculpatory evidence to defense counsel, then they were ineffective in not using it at trial.

Additionally, in the course of preparing for this hearing, and in the hearing itself,

additional information was developed concerning suppressed exculpatory evidence. This evidence includes matters testified to by the trial prosecutor. This additional information is referenced in the amended writs and requires further fact finding by the trial court.

II.

The hearing held in this case on October 26-27, 2015, does not resolve all of the factual questions in this case. In fact, the hearing created additional factual questions and caused Applicants to raise additional grounds for relief. For these reasons, Applicants ask that this case be remanded back to the trial court for the court to gather facts and address the issues raised in the amended writ applications.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Applicants request that the Court grant this motion and remand these cases to the trial court for further fact development and findings. Applicants also request that the previous remand order be abated and superceded by a new general order.

Respectfully submitted,

_____/s/ Gary A. Udashen_____
GARY A. UDASHEN
Bar Card No. 20369590
SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
214-468-8100
214-468-8104 fax
Appearing on Behalf of the
Innocence Project of Texas

*Counsel for Dennis Lee Allen*

_/s/ Nina Morrison_

Nina Morrison
INNOCENCE PROJECT, INC.
40 Worth Street, Suite 701
New York, New York   10013
212-364-5340
212-264-5341 fax

_/s/ Ezekiel Tyson_

EZEKIEL TYSON, JR.
Bar Card No. 24034715
THE TYSON LAW FIRM
342 W. Montana Avenue
Dallas, Texas  75224
214-942-9000
214-942-9001 fax

*Counsel for Stanley Orson Mozee*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Motion to Remand Cases to Trial Court was electronically delivered to Cynthia Garza and Patricia Cummings, Assistant Dallas County District Attorneys, on this the 4th day of November, 2015.

_/s/ Gary A. Udashen_
GARY A. UDASHEN

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that he has conferred with the Dallas County District Attorney's Office and they have no opposition to the granting of this motion.

_/s/ Gary A. Udashen_
GARY A. UDASHEN



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Dennis Lee Allen

DATE OF BIRTH: July 7, 1962

PLACE OF CONFINEMENT: On Bond

TDCJ-CID NUMBER: 01001859          SID NUMBER: 05465683

(1)     This application concerns (check all that apply):

      X    a conviction        ☐      parole

      X    a sentence        ☐      mandatory supervision

      ☐    time credit        ☐      out-of-time appeal or petition for discretionary review

(2)     What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

    265th Judicial District Court/Dallas County

(3)     What was the case number in the trial court?

    F00-01305-FR

(4)     What was the name of the trial judge?

    Keith Dean

**(5)** Were you represented by counsel?  If yes, provide the attorney's name:

Yes, Jim Oatman

**(6)** What was the date that the judgment was entered?

September 1, 2000

**(7)** For what offense were you convicted and what was the sentence?

Capital Murder/Life

**(8)** If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

**(9)** What was the plea you entered? (Check one.)

☐ guilty-open plea      ☐ guilty-plea bargain
X  not guilty      ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

**(10)** What kind of trial did you have?

☐ no jury        X  jury for guilt and punishment
               ☐ jury for guilt, judge for punishment

2

(11) Did you testify at trial?  If yes, at what phase of the trial did you testify?

Yes, Guilt-Innocence

(12) Did you appeal from the judgment of conviction?

X yes                                        ☐ no

If you did appeal, answer the following questions:

(A) What court of appeals did you appeal to?    8th District/El Paso

(B) What was the case number?   08-00-00442-CR

(C) Were you represented by counsel on appeal? If yes, provide the attorney's name:

Yes

(D) What was the decision and the date of the decision?   Affirmed - 07/11/2002

(13) Did you file a petition for discretionary review in the Court of Criminal Appeals?

X yes                                        ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A) What was the case number?        1390-02

(B) What was the decision and the date of the decision?   Refused - 01/29/2003

(14) Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

X yes                                        ☐ no

If you answered yes, answer the following questions:

(A) What was the Court of Criminal Appeals' writ number? 56,666-02

3

(B) What was the decision and the date of the decision?   Denied - 11/12/2013

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

The current claims are based on newly available and newly discovered evidence

that could not have been presented at the time of the filing of the first application.

The factual and legal basis of these claims was not available.  Moreover, by a preponderance of the evidence, but for a violation of the U. S. Constitution, no rational juror could have found the Applicant guilty beyond a reasonable doubt. Art. 11.07, Sec. 4.

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes                    X no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                    ☐ no

If you answered yes, answer the following questions:

(A) What date did you present the claim?  _____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

_____

_____

_____

_____

_____

(17)   Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

Applicant is entitled to relief based on newly discovered evidence of actual innocence. No rational jury would have found proof of guilt beyond a reasonable doubt had the new DNA and other evidence been available.

**FACTS SUPPORTING GROUND ONE:**

Newly discovered and newly available evidence demonstrates Applicant's innocence. This evidence is three separate DNA tests definitely excluding both Applicants (Allen and co-defendant Mozee) as the source of probative evidence from the crime scene. An unknown person was the source of 1) DNA mixed with the victim's in a distinct drop of blood swabbed from the front of the store. 2) DNA on the handle of a hammer found next to the victim's corpse, which contained the victim's own blood on the ball end. 3) A hair underneath the victim's fingernails. Additional newly available evidence of innocence, includes correspondence from two jailhouse informants, Lonel Hardeman and Zane Smith, which contradicted their trial testimony revealing that they had sought and believed they had been promised deals for their testimony. There is also evidence that these informants fabricated their claims against Allen and Mozee. Other new evidence is that Det. Berry swore out an affidavit in which he made false representations regarding the eyewitnesses he had interviewed. Additional newly discovered evidence is that one of the three store clerks who Det. Berry claimed had identified Allen had

6

actually told another officer she did not get a good look at the suspect and could not identify anyone. Moreover, there is newly discovered evidence that none of the three store clerks who allegedly identified Allen as passing the deceased's credit cards actually stands by their identification and each of them have withdrawn or recanted their identification or expressed doubts about it. More newly discovered evidence consists of statements from neutral eyewitnesses describing a pair of suspects seen before and after the murder who did not fit the physical features of Mozee and Allen. Also, there is new evidence of at least one additional undisclosed eyewitness interviewed by Det. Berry who gave a detailed description of two men he saw arguing with the victim shortly before his death. Other new evidence is the fact that nowhere in the state's files is there any reference to photo arrays containing either defendant being shown to two eyewitnesses - Scott James and Insun Chon - which indicates that photo arrays were shown to these witnesses but they did not pick out Mozee or Allen. There is also newly discovered evidence that Zane Smith had a motive to claim that Stan Mozee confessed to involvement in this murder: that Mozee allegedly stole Smith's commissary in jail. This newly discovered evidence establishes that Applicant is actually innocent in that no rational juror would have convicted him in light of the newly discovered evidence. Additionally, actual innocence is also established under the *Schlup* standard as a gateway to the other constitutional violations alleged in this Application.

7

**GROUND TWO:**

Applicant is entitled to relief because, by a preponderance, he would not have been convicted

had the new DNA evidence been available at trial.

**FACTS SUPPORTING GROUND TWO:**

Under Art. 11.073, Tex. Code Crim. Proc., the new DNA evidence in this case provides a ground

for relief. This new DNA evidence was not available to be offered by Applicant at his trial since

it was not in existence. This new DNA evidence identifies DNA from persons other than Allen

or Mozee, in locations where DNA from the persons who committed this murder would be

found. Had this new scientific DNA evidence been available and been presented at trial, on the

preponderance of the evidence, Applicant would not have been convicted.

8

**GROUND THREE:**

The state failed to disclose exculpatory evidence in violation of Applicant's due process rights.

**FACTS SUPPORTING GROUND THREE:**

The state failed to disclose exculpatory evidence in violation of due process as follows:

1) Pretrial correspondence from informants Hardeman and Smith found in the file of the Assistant District Attorney who prosecuted this case contains the following exculpatory evidence which was not disclosed to the defense and which contradicts trial testimony presented by the state.

a.     Correspondence from Lonel Hardeman to the prosecutor regarding his belief that he a deal for his testimony with the prosecutor. This directly contradicts Hardeman's testimony, directly elicited by the prosecutor, that he had no deal, understanding, arrangement or expectation of leniency, did not want a deal and never even discussed a deal.

b.     Correspondence from Zane Smith to the prosecutor regarding his discussions with the prosecutor regarding assistance from the prosecutor with Smith's own legal issues. This also contradicted direct testimony from Smith, elicited by the prosecutor, that there was no deal, understanding, arrangement or expectation of leniency. This exculpatory correspondence and the discussions between the informants and the prosecutor or other state agents was never revealed to the defense.

10

Because the state lacked any forensic or credible eyewitness testimony inculpating either defendant in the crimes, and was forced to rely so heavily on informant testimony to prove its case, the violations here were unquestionably material to the outcome. Moreover, the state's violations were compounded by the fact that its former lead prosecutor (1) was under direct pretrial orders from the trial court to make timely disclosure of precisely such *Brady* material, and (2) repeatedly and deliberately elicited testimony from both informants at trial disclaiming any expectation of personal benefit to themselves, even though he knew - as reflected by the letters in his own file - that this testimony was false.

2. The state also failed to reveal deals, agreements or understandings with the following witnesses that the state either would or already had assisted them with their own criminal problems: (a) John Paul Robinson, (b) Cynthia Sloan, (c) Kenneth Jones, (d) Charles Manning, (e) Alvin Degrafton-Reid, (f) Zane Smith. In fact on Manning and Degrafton-Reid, the police detective helped them with their probation violations.

3. The state also failed to reveal that the prosecutor interviewed the following two witnesses who allegedly identified Allen as passing the deceased's credit cards and they expressed doubt about their identification: witnesses Kwoon and Jang.

11

**GROUND FOUR:**

State's witnesses testified falsely at trial and the prosecutor failed to correct their testimony or inform the court of its falsity.

**FACTS SUPPORTING GROUND FOUR:**

State's witness Lonel Hardeman claimed at trial that he had no deal, understanding or agreement with the state, that he would receive help with his own criminal cases after his testimony. He also claimed that he had no discussion about help with his cases, had no hope of leniency from the state, and did not want any help and would not accept it if offered. All of these statements were false and the prosecutor knew they were false. Yet, the prosecutor did nothing to correct this false testimony or inform the court of its falsity. This is a violation of the prosecutor's duty to correct false testimony and is a violation of Applicant's right to due process.

State's witness Zane Smith also falsely implied to the jury that he had received no help from the state on his case and expected none. Likewise, state's witnesses Robinson, Sloan, Manning and Degrafton-Reid all testified that they had no understanding with the state for assistance on their cases, and the state had not and would not assist them. This was also false testimony the state failed to correct violating Applicant's due process rights.

GROUND FIVE:

The State secured Applicant's conviction through the presentation of false testimony from its lead detective in violation of Applicant's due process rights.

**FACTS SUPPORTING GROUND FIVE :**

The state secured these convictions through the knowingly false sworn statements of Det. Berry.

Berry had submitted an affidavit prior to trial in support of applicant's arrest where he stated that he had located three employees at businesses where suspects had attempted to use the victim's stolen credit cards within hours of the murder. Berry further attested that the three employees had identified Allen from the photo array. Berry also testified to this. Newly discovered police reports and notes from the District Attorney's trial file show that these statements were false. Moreover, Det. Berry had located and interviewed five, not three employees from these businesses. In fact, not all of them selected Allen's photograph; one clerk did not, identifying a different suspect.Also, as to the most relevant witness, Insun Chon, who dealt directly with the suspect and refused to complete the transaction, Det. Berry's reports make no mention of any array or lineup ever being shown him. This is likely because the identification procedure engaged in with this witness did not result in any inculpatory evidence.

Det. Berry's credibility was critical to the state's case: he was the only witness to the allegedly

14

voluntary "confession" of guilt made by Mr. Mozee in custody, and he interviewed virtually all of the state's key informants and eyewitnesses. The new evidence that he knowingly misrepresented the nature of the eyewitness evidence to the court and jury in sworn statements undermines confidence in the trial's outcome and requires due process relief.

**GROUND SIX:**

The state failed to disclose favorable eyewitness evidence in violation of Applicant's due process

rights.

**FACTS SUPPORTING GROUND SIX:**

The state's trial prosecutor also failed to disclose exculpatory evidence regarding

eyewitnesses, in violation of due process and the district court's express pretrial orders.

In particular, the state failed to disclose the fact that Ms. Kyoung Jang, one of the three store

clerks who purportedly identified Allen to Det. Berry, had earlier stated to another detective

that she "could not recognized [sic] anyone in relation to the attempt [sic] use of the

complainant's credit card, as she had not gotten a close look at the individual trying to use it."

This report was addressed to Det. Berry, was dated more than a year before trial, and was part of

the prosecution's trial file, but was never disclosed to either defense counsel. In addition, the

District Attorney's trial file contains a report regarding another key eyewitnesses who also did

not identify Allen or Mozee: Insun Chon, a store manager who refused to complete the

transaction with the man who tried to use the victim's stolen card Yet, there are no reports

reflecting that eyewitness identification procedures (arrays/lineups) were shown to this witness -

despite the fact that Det. Berry showed the defendants'photographs to every other witness

16

who viewed the suspects, including those with far more limited opportunities to view the suspects than Mr. Chon This strongly indicates that this witness, consistent with the rest of the investigation, was in fact show the defendants' photographs and did not identify them, but the state failed to memorialize or disclose that fact to the defense. In fact, a recently disclosed notation in the district attorney's file indicates that Mr. Chon did not identify either defendant prior to trial and the prosecutor was aware of that fact.

**GROUND SEVEN:**

The testimony from the informants was false and presented in violation of due process.

**FACTS SUPPORTING GROUND SEVEN:**

State's witness Hardeman now admits that the testimony he presented at trial was false and that Allen did not say the things he claimed at trial he said. Moreover, it is clear from the records that he falsely testified concerning whether he expected to receive any benefits from the state. Even if the prosecutor did not know of the falsity of the substance of this testimony, the presentation of this false testimony is a violation of due process.

The Court of Criminal Appeals has previously held that due process requires relief whether new evidence reveals that a key witness's trial testimony against a defendant was false, whether or not trial prosecutors knew or should have known of its falsity. Thus, the informant's recantation, if credited, would provide further grounds for granting the writ (in addition to the considerable documentary evidence establishing due process violations regarding these informants as set forth separately in other grounds, *supra*).

18

**GROUND EIGHT:**
Applicant received ineffective assistance of counsel at trial.

**FACTS SUPPORTING GROUND EIGHT:**

In an evidentiary hearing on this writ application, the state's prosecutor at trial, Rick Jackson,

claimed that an entry in his notes stating that he showed physical evidence to defense counsel

Jim Oatman, means that he showed defense counsel the letters from Hardeman and Smith

concerning their discussions with the state about help the state would give them on their cases.

Prosecutor Jackson does not claim to remember actually giving or showing defense counsel

these letters. Rather, he relies on this notation of showing defense counsel the physical

evidence as his basis for his claim that he showed the letters to defense counsel. Nevertheless,

the evidence clearly shows that the prosecutor did not show these letters to defense counsel.

However, if the court finds the prosecutor's testimony in this regard convincing, then there is

clear and obvious ineffective assistance of counsel by defense counsel in failing to use these

letters at trial to impeach the testimony of Hardeman and Smith claiming they had no deal,

agreement, arrangement or understanding that the state would assist them in their own cases.

This ineffective assistance would be inadequate performance by counsel and would have

20

affected the outcome of these cases since Hardeman and Smith were important state

witnesses.

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _Dallas_

_____Gary A. Udashen_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _3rd_ DAY OF _November_ 20 _15_.

_____
Signature of Notary Public

PHYLLIS ANN SPURGEON
Notary Public, State of Texas
My Commission Expires
April 27, 2016

22

## PETITIONER'S INFORMATION

Petitioner's printed name:  Gary A. Udashen

State bar number, if applicable: 20369590

Address:   2311 Cedar Springs Road

    Suite 250

    Dallas, Texas  75201

Telephone: 214-468-8100

Fax:  214-468-8104

## INMATE'S DECLARATION

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____
Signature of Applicant / Petitioner (circle one)

23

**PETITIONER'S INFORMATION**

Petitioner's printed name:  Gary A. Udashen

Address:  2311 Cedar Springs Road

Suite 250

Dallas, Texas  75201

Telephone: 214-468-8100

Fax:  214-468-8104

Signed on _Nov. 3_, 20_15_.

_[signature]_

Signature of Petitioner

24

Case No. _____
(The Clerk of the convicting court will fill this line in.)

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: ____Stanley Orson Mozee_____

DATE OF BIRTH: ____04/21/1959_____

PLACE OF CONFINEMENT: ___On bond pursuant to Art. 11.65_____

TDCJ-CID NUMBER: 939024_____ SID NUMBER: _2375532_____

(1)    This application concerns (check all that apply):

    ☑ a conviction        ☐ parole

    ☑ a sentence        ☐ mandatory supervision

    ☐ time credit        ☐ out-of-time appeal or petition for discretionary review

(2)    What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

    265th Judicial District Court of Dallas County, Texas

(3)    What was the case number in the trial court?

    F99-02631-R

(4)    What was the name of the trial judge?

    Judge Keith Dean

(5)    Were you represented by counsel? If yes, provide the attorney's name:

Matt Fry

(6)    What was the date that the judgment was entered?

August 2, 2000

(7)    For what offense were you convicted and what was the sentence?

Capital murder with a deadly weapon; Life imprisonment

(8)    If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

N/A

(9)    What was the plea you entered? (Check one.)

☐ guilty-open plea       ☐ guilty-plea bargain
☑ not guilty            ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

(10)   What kind of trial did you have?

☐ no jury              ☐ jury for guilt and punishment
                         ☑ jury for guilt, judge for punishment

2

(11)    Did you testify at trial?  If yes, at what phase of the trial did you testify?

Yes, both during trial and during a pre-trial hearing to suppress the confession.

(12)    Did you appeal from the judgment of conviction?

☑ yes                              ☐ no

If you did appeal, answer the following questions:

(A)   What court of appeals did you appeal to?     5th District, Dallas, Texas

(B)   What was the case number?        05-00-01260-CR

(C)   Were you represented by counsel on appeal? If yes, provide the attorney's name:

Dean M. Swanda

(D)   What was the decision and the date of the decision?     Affirmed 12/14/2001

(13)    Did you file a petition for discretionary review in the Court of Criminal Appeals?

☐ yes                              ☑ no

If you did file a petition for discretionary review, answer the following questions:

(A)   What was the case number?        _____

(B)   What was the decision and the date of the decision?   _____

(14)    Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                              ☑ no

If you answered yes, answer the following questions:

(A)   What was the Court of Criminal Appeals' writ number?   _____

3

(B)  What was the decision and the date of the decision?  _____

(C)  Please identify the reason that the current claims were not presented and could
     not have been presented on your previous application.

_____

_____

_____

_____

(15)  Do you currently have any petition or appeal pending in any other state or federal
      court?

☐ yes                          ☑ no

If you answered yes, please provide the name of the court and the case number:

_____

(16)  If you are presenting a claim for time credit, have you exhausted your
      administrative remedies by presenting your claim to the time credit resolution
      system of the Texas Department of Criminal Justice? (This requirement applies to
      any final felony conviction, including state jail felonies)

☐ yes                          ☐ no

If you answered yes, answer the following questions:

(A)  What date did you present the claim?  _____

(B)  Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

_____

_____

_____

_____

_____

(17)   Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

Newly Discovered Evidence Establishes that Mr. Mozee is Actually Innocent. No Rational Jury Would Have Found Proof of Guilt Beyond a Reasonable Doubt Had the Newly Discovered Evidence Been Available.

**FACTS SUPPORTING GROUND ONE:**

A combination of previously-unavailable DNA evidence and exculpatory documentary evidence that was suppressed by the State's trial prosecutors demonstrates the innocence of Mr. Mozee and his co-defendant Dennis Allen; at the very least, no rational jury would have convicted either man of capital murder had this evidence been available. The new evidence includes, inter alia: (1) newly obtained DNA testing revealing that person(s) other than the defendant deposited DNA mixed with the victim's on a bloodstain at the scene of the crime, in a hair fragment under the victim's fingernails, and on a hammer found next to the victim's corpse; (2) contemporaneous correspondence from the State's two primary jailhouse informants, revealing that both men had repeatedly sought, and believed they had been promised, leniency in their own cases in direct exchange for their testimony for the State, in direct contravention of their trial testimony and the State's own representations to the jury; (3) exculpatory eyewitness evidence suppressed by the State at trial; and (4) evidence that the lead detective in the case -- whose credibility was critical to the State's presentation -- had submitted a false pretrial affidavit to the court, misrepresenting the nature of the eyewitness evidence gathered to date. Given the lack of forensic

6

evidence or credible lay witness testimony connecting either defendant to the crime, had the new evidence

been available, it would have unquestionably changed the outcome of the trial and resulted in both

Applicants' acquittals.

**GROUND TWO:**

Applicants are Entitled to Relief Because, By a Preponderance of the Evidence, They Would Not Have

Been Convicted Had the New DNA Evidence Been Available at Trial.

**FACTS SUPPORTING GROUND TWO:**

The new DNA evidence set forth with respect to Claim One, supra, also entitles Applicants to relief under

the newly enacted provisions of Tex. Code Crim. Proc. art. 11.073, in that it establishes, by a preponderance

of the evidence, that Mr. Mozee and his co-defendant would not have been convicted had the jury heard

that evidence. The State's trial case rested on the uncorroborated "confession" of Mr. Mozee (which was

written out for him by the lone detective to whom he had allegedly made these unrecorded admissions)

which he has disavowed for more than fifteen years, as well as the implausible and self-interested testimony

of a jailhouse informant. For this reason, new DNA evidence pointing to an unknown individual as the

source of key DNA deposits in multiple locations at the scene of this violent robbery-murder would have

readily tipped the scales to acquittal, satisfying the preponderance standard for relief.

8

**GROUND THREE:**

The State Failed to Disclose Favorable Evidence Regarding At Least Two Jailhouse Informant Witnesses, and

Elicited Testimony from the Informants that the Trial Prosecutor Knew Was False, in Violation of Applicant's

Due Process Rights.

**FACTS SUPPORTING GROUND THREE:**

The State's tral prosecutors violated Mr. Mozee's right to due process of law by failing to

disclose the substance of their explicit communications with at least two jailhouse

informants -- one of whom testified at both trials, and one of whom testified only at Mr.

Allen's trial. These communications pertained to the benefits that both informants expressly sought and

believed they had been promised in direct exchange for their testimony against the defendants, including

undisclosed letters sent to the former lead prosecutor in which the informants sought certain benefits

in exchange for testifying and/or sought to have the prosecution fulfill promises of assistance that

informants believed had been expressly made to them. Testimony by informant Zane Smith at Mr.

Mozee's trial, and by the former prosecutor in this proceeding, that Smith had "no deal,"

whether express or implied, is contradicted not only by the above correspondence, but also by the fact that

after both trials were over, the prosecutor went to extraordinary lengths to obtain the promised benefit for

Smith. He did so by appearing for the State in an "agreed motion for a new trial," even after the time to

seek (and the district court's jurisdiction to grant) such relief had expired; this resulted in

10

the entry of what was effectively an illegal judgment and sentence reduction on Smith's behalf.

In addition, the State failed to disclose to either defendant the fact that the lead homicide detective in this case assisted two other informants, Charles Manning and Alvin Degraftenreed, with pending probation violations before they testified. This fact is reflected in pretrial notes prepared by the lead trial prosecutor, Rick Jackson, and other information provided by the State during this proceeding pursuant to its ongoing Brady obligations; it directly contradicts the prosecutor's sworn testimony in this proceeding that he never assisted, or directed anyone to assist, a State informant with any pending criminal matter before the informant testified.

This evidence is relevant to assessing the prosecutor's credibility on all of the due process issues presented in this writ, including whether he played any role in assisting informant Zane Smith with his own pending criminal charges, which were resolved by a highly favorable plea less than three weeks before he testified against Mr. Mozee.

Finally, with respect to informant Smith, newly disclosed materials from former ADA Jackson's trial file that predate Smith's plea and his testimony against Mr. Mozee further contradict the prosecutor's claim that he fulfilled his obligations to timely inform Mr. Mozee's counsel of Smith's testimony (instead representing

11

the entry of what was effectively an illegal judgment and sentence reduction on Smith's behalf.

In addition, the State failed to disclose to either defendant the fact that the lead homicide detective in this case assisted two other informants, Charles Manning and Alvin Degraftenreed, with pending probation violations before they testified. This fact is reflected in pretrial notes prepared by the lead trial prosecutor, Rick Jackson, and other information provided by the State during this proceeding pursuant to its ongoing Brady obligations; it directly contradicts the prosecutor's sworn testimony in this proceeding that he never assisted, or directed anyone to assist, a State informant with any pending criminal matter before the informant testified.

This evidence is relevant to assessing the prosecutor's credibility on all of the due process issues presented in this writ, including whether he played any role in assisting informant Zane Smith with his own pending criminal charges, which were resolved by a highly favorable plea less than three weeks before he testified against Mr. Mozee.

Finally, with respect to informant Smith, newly disclosed materials from former ADA Jackson's trial file that predate Smith's plea and his testimony against Mr. Mozee further contradict the prosecutor's claim that he fulfilled his obligations to timely inform Mr. Mozee's counsel of Smith's testimony (instead representing

11

to counsel that he had only been contacted by Smith a "few days"before trial); and to

provide the defense with Smith's prior written statements and other exculpatory

information regarding Smith.

The former trial prosecutor has admitted in this proceeding that he was under a legal obligation to provide

this information to Mr. Mozee's counsel, yet he has no recollection or record of doing so. Because the State

lacked any forensic or credible eyewitness testimony inculpating either defendant in the crime, and was

forced to rely so heavily on informant testimony to prove its case, the violations here were

unquestionably material to the outcome. Moreover, the State's violations were compounded by the

fact that its former lead prosecutor (1) was under written orders from the trial court to make timely

disclosure of this material, and (2) repeatedly elicited false testimony from both informants at trial

disclaiming any expectation of, orunderstanding regarding, future personal benefits to themselves.

As such, Mr. Mozee is entitled to relief if there is any reasonable likelihood that the false testimony

effected the judgment of the jury.

## GROUND FOUR:

The State Secured Applicants' Convictions Through the Presentation of False Testimony from Its Lead Detective in Violation of Due Process

## FACTS SUPPORTING GROUND FOUR:

The State violated Mr. Mozee's due process rights when it secured his conviction through the knowingly false sworn statements of Det. Rick Berry. Det. Berry submitted an affidavit prior to trial in support of co-defendant Allen's arrest, in which he represented to the Court that he had thus far located "three employees" from the various business at which an unknown suspect, accompanied by a second man, had attempted to use the victim's stolen credit cards within hours of the murder. He further attested that he had shown defendant Mr. Allen's photo to each of "the three employees" he had identified from these locations, at which time they "all picked the defendant's photo as the person who had used the credit cards." He then repeated this alleged chain of events to the jury in sworn testimony at Mr. Mozee's trial.

Newly-disclosed police reports from the District Attorney's trial file reveal that these statements were false. In fact, Det. Berry's own reports show that when this affidavit was submitted, police had interviewed five -- not three -- employees from the various businesses who had witnessed the use of the stolen cards. Moreover, not "all" of them selected Allen's photo: one clerk did not (identifying a different suspect), and the lineup report for the fifth (the store manager, who had the most direct contact with the

13

suspects) was never produced and may never have been prepared.

Det. Berry's credibility was critical to the State's case: he was the only witness to the allegedly

voluntary "confession" of guilt made by Mr. Mozee in custody, and he interviewed virtually all of

the State's key informants and eyewitnesses. The new evidence that he misrepresented the

nature of the eyewitness evidence to the Court and jury in sworn statements undermines confidence in

the trial's outcome and requires due process relief.

**GROUND FIVE:**

The State Failed to Disclose Favorable Eyewitness Evidence in Violation of Due Process.

**FACTS SUPPORTING GROUND:**

The State's former trial prosecutors also failed to disclose exculpatory evidence regarding eyewitnesses, in violation of due process and the district court's express pretrial orders.

In particular, the State failed to disclose the fact that Ms. Kyoung Jang, one of the three store clerks who purportedly identified Allen to Det. Berry, had earlier stated to another detective that she "could not recognized [sic] anyone in relation to the attempt [sic] use of the complainant's credit card, as she had not gotten a close look at the individual trying to use it." This report was addressed to Det. Berry, was dated more than a year before trial, and was part of the prosecution's trial file, but was never disclosed to either defense counsel. In addition, the District Attorney's trial file contains reports and notes regarding at least one other key eyewitness who also did not identify Mr. Allen or Mr. Mozee: Insun Chon, a store manager who refused to complete the transaction with the man who tried to use the victim's stolen card. Yet there are no reports reflecting that eyewitness identification procedures (arrays/lineups) were shown to him -- despite the fact that Det. Berry showed the defendants' photographs to every other witness who viewed the suspects, including those with far more limited opportunities to view the suspects than Mr. Chon.

15

Recently obtained pretrial notes from Mr. Jackson's trial file also indicate that (1) Mr. Chon did not identify Allen or Mozee as the perpetrator, and (2) Mr. Jackson met with several of the eyewitnesses who made the allegedly positive identifications shortly before the defendants' trials, yet did not call them as witnesses. This undisclosed exculpatory matherial further undermines confidence in the coutcome of the trial.

## GROUND SIX:

~~Applicants Were Convicted on the Basis of False Testimony by Jailhouse Informants, Requiring~~ Due Process

Relief Even if the Witnesses' Perjury Was Unknown to Prosecutors

## FACTS SUPPORTING GROUND:

Two State informants -- Lonel Hardeman and Zane Smith -- have given voluntary interviews to

Applicants' counsel in which they admit that they gave false testimony at the trials of Mr. Mozee and Mr.

Allen. Smith has specifically admitted what was already indicated from the newly disclosed file materials:

that he falsely testified when he claimed to expect no personal benefits from the State in exchange for his

testimony. In fact, he believed he had been specifically promised by the trial prosecutor that the State would seek

a sentence reduction on his behalf after he testified. Testimony by Smith at trial, and by the former prosecutor in

this writ proceeding, that they had no express or even implied "deal" is further undermined by the fact that after

both trials were over, ADA Jackson went to extraordinary lengths to obtain the promised benefit for Smith, by

filing an "agreed motion for a new trial" even after the time to seek (and the court's jurisdiction to grant) such

relief had expired, resulting in the entry of what was effectively an illegal judgment and sentence reduction on

Smith's behalf.

The Court of Criminal Appeals has previously held that due process requires relief where new evidence

reveals that a key witness's trial testimony against a defendant was false, whether

17

or not trial prosecutors knew or should have known of its falsity. Thus, the informants' recantations, if credited, would provide further grounds for granting the writ (in addition to the considerable documentary evidence establishing due process violations regarding these informants as set forth separately in Ground Three, supra).

18

**GROUND SEVEN:**
Applicant Received Ineffective Assistance of Counsel at Trial

**FACTS SUPPORTING GROUND:**

Applicant received ineffective assistance of trial counsel in at least three respects:

    (a)    Counsel failed to object to hearsay testimony elicited by the State from Det. Rick Berry that

three store clerks had "identified" Mr. Mozee's co-defendant, Dennis Allen, as the person who used the

victim's stolen credit card on the night of the murder. Counsel also failed to conduct a reasonable pretrial

investigation into these alleged identifications. This lack of diligence allowed the State to improperly argue

in summation that the identifications of Allen corroborated Mr. Mozee's custodial "confession," which greatly

prejudiced Mr. Mozee. Indeed, at Mr. Allen's trial (when this hearsay testimony was not used), none

of the three store clerks actually identified Allen: one clerk recanted his earlier alleged identification, and the

other two clerks did not testify.

    (b)    Counsel failed to challenge the voluntariness and truthfulness of Mr. Mozee's custodial

"confession" when he failed to obtain and introduce recent medical records showing that Mr. Mozee had a

documented history of serious mental illness, including schizophrenia, that made him susceptible to giving a

false and involuntary confession. Counsel also failed to retain a qualified expert on false confessions or

**GROUND SEVEN:**
Applicant Received Ineffective Assistance of Counsel at Trial

**FACTS SUPPORTING GROUND:**
Applicant received ineffective assistance of trial counsel in at least three respects:

(a)    Counsel failed to object to hearsay testimony elicited by the State from Det. Rick Berry that

three store clerks had "identified" Mr. Mozee's co-defendant, Dennis Allen, as the person who used the

victim's stolen credit card on the night of the murder. Counsel also failed to conduct a reasonable pretrial

investigation into these alleged identifications. This lack of diligence allowed the State to improperly argue

in summation that the identifications of Allen corroborated Mr. Mozee's custodial "confession," which greatly

prejudiced Mr. Mozee. Indeed, at Mr. Allen's trial (when this hearsay testimony was not used), none

of the three store clerks actually identified Allen: one clerk recanted his earlier alleged identification, and the

other two clerks did not testify.

(b)    Counsel failed to challenge the voluntariness and truthfulness of Mr. Mozee's custodial

"confession" when he failed to obtain and introduce recent medical records showing that Mr. Mozee had a

documented history of serious mental illness, including schizophrenia, that made him susceptible to giving a

false and involuntary confession. Counsel also failed to retain a qualified expert on false confessions or

19

**GROUND SEVEN:**
Applicant Received Ineffective Assistance of Counsel at Trial

**FACTS SUPPORTING GROUND:**

Applicant received ineffective assistance of trial counsel in at least three respects:

(a)     Counsel failed to object to hearsay testimony elicited by the State from Det. Rick Berry that

three store clerks had "identified" Mr. Mozee's co-defendant, Dennis Allen, as the person who used the

victim's stolen credit card on the night of the murder.  Counsel also failed to conduct a reasonable pretrial

investigation into these alleged identifications.  This lack of diligence allowed the State to improperly argue

in summation that the identifications of Allen corroborated Mr. Mozee's custodial "confession," which greatly

prejudiced Mr. Mozee.  Indeed, at Mr. Allen's trial (when this hearsay testimony was not used), none

of the three store clerks actually identified Allen: one clerk recanted his earlier alleged identification, and the

other two clerks did not testify.

(b)     Counsel failed to challenge the voluntariness and truthfulness of Mr. Mozee's custodial

"confession" when he failed to obtain and introduce recent medical records showing that Mr. Mozee had a

documented history of serious mental illness, including schizophrenia, that made him susceptible to giving a

false and involuntary confession.  Counsel also failed to retain a qualified expert on false confessions or

19

otherwise present evidence to help the jury understand why the "confession" lacked any indicia of truthfulness or reliability. This ineffectiveness greatly prejduced Mr. Mozee because it allowed the State to argue in summation that there was no evidence he suffered from mental illness, that he was feigning symptoms of mental illness, and that his signed confession was voluntary and reliable.

(c)    At an evidentiary hearing on this writ application, trial prosecutor Rick Jackson admitted that he had no specific recollection of showing Mr. Mozee's counsel the letters received from informants Hardeman and Smith regarding the benefits they expected to receive from the State in exchange for their testimony; nor did he have any file notation corroborating his belief that he must have fulfilled his obligation to Mr. Mozee's counsel to disclose this correspondence to him. The evidence establishes that the prosecutor did not show these letters to either defense counsel. However, if the court finds the prosecutor's testimony in this regard is convincing, then there is clear and obvious ineffective assistance of counsel by defense counsel in failing to use these letters at trial to impeach the testimony of Smith claiming he had no deal, agreement, arrangement or understanding that the state would assist him with his own plea and sentence, or to seek a new trial for Mr. Mozee based on the letters and the false testimony given by the various informants at both trials. This ineffective assistance, if proven, would be deficient performance by counsel and would

20

undermine confidence in the outcome of the trial.

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF ___Dallas___

___Ezekiel Tyson, Jr.___, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS __4__ DAY OF _Nov._ 20 _15_.

VERONICA SCOTT
My Commission Expires
January 6, 2019

_____
Signature of Notary Public

22

**PETITIONER'S INFORMATION**

Petitioner's printed name:   Ezekiel Tyson, Jr.

Address:   The Tyson Law Firm

342 W. Montana Avenue

Dallas, Texas 75224

Telephone:   214-942-9000

Fax:   214-942-9001

Signed on _November 4_, 20 _15_.

_____
Signature of Petitioner

24

## PETITIONER'S INFORMATION

Petitioner's printed name:_____Ezekiel Tyson, Jr._____

State bar number, if applicable: ___24034715_____

Address: _____The Tyson Law Firm_____

_____342 W. Montana Avenue_____

_____Dallas, Texas 75224_____

Telephone:_214-942-9000_____

Fax:__214-942-9001_____

## INMATE'S DECLARATION

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____
Signature of Applicant / Petitioner (circle one)

23